UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BESSIE DANIEL,

            Plaintiff,

    v.
                                        Case No. 12-10170
TARGET CORPORATION,                     Honorable Julian Abele Cook, Jr.

            Defendant.


ORDER

The Plaintiff, Bessie Daniel, filed this action against the Defendant, Target Corporation ("Target"), seeking to obtain an award of damages for the injuries that she allegedly sustained while visiting its retail store in Southfield, Michigan. The case was initiated in the Oakland County Circuit Court of Michigan and subsequently removed to this Court on the basis of its diversity jurisdiction. 28 U.S.C. §§ 1332, 1441. Currently pending before the Court is Target's motion for summary judgment.

I.

On December 17, 2010, at approximately 5:30 p.m., Daniel entered the Target's store in the Northland Shopping Center in Southfield, Michigan in order to return a baby carriage that had been recently purchased by her. As she walked along the main aisle near the front of the store, she slipped and fell onto the floor, injuring her back and knees. The circumstances surrounding her fall and subsequent events are in dispute.

According to Daniel, she slipped on some water that covered the tile floor in front of the

jewelry counter. Daniel, while acknowledging that she never saw any collection of water near the jewelry counter, has assumed - in retrospect - that the general area of the floor where she fell was wet. She based this assumption on her post-fall observation of several Target employees using white cloths to wipe the floor where she had slipped. Target denies this theory, contending that the floor was never wet at any time during Daniel's visit to its store.

Following Daniel's fall, an unidentified Target employee assisted Daniel to her feet and found a chair for her upon which she could rest while awaiting the arrival of medical personnel. Shortly thereafter, Daniel was approached by another unidentified person - presumed to be a Target employee - who asked her a series of questions about her fall. Her answers were then placed on an accident report form, the accuracy of which remains in dispute.

Betty Allen - a nearby witness to the fall - supports Daniels' version of the incident. According to Allen, the entire front of the store was covered with standing water from melted snow that, in her view, had been tracked into the store by customers. Allen testified in a deposition that Daniel had been walking unsteadily on the wet floor prior to her fall. As a result of her fall, Daniel claims to have sustained multiple injuries to her knees, hips, and back. This lawsuit followed.

## II.

The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element

2

of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a request for the entry of a summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate only if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

3

III.

In its motion for summary judgment, Target submits that Daniel has failed to demonstrate that its duty to provide reasonably safe premises for its customers had been breached. Daniel disagrees, contending that a genuine question of a material fact exists as to whether Target failed to timely remove the puddles of water that were tracked into its store by customers.

"In order to make out a prima facie case of negligence, the plaintiff must prove the four elements of duty, breach of that duty, causation, and damages." *Brown v. Brown,* 739 N.W.2d 313, 316–17 (Mich. 2007) (citing *Fultz v. Union–Commerce Assoc.,* 683 N.W.2d 587, 590 (Mich. 2004)).Thus, "[t]he threshold question in a negligence action is whether the defendant owed a duty to the plaintiff." *Fultz,* 683 N.W.2d at 590. In Michigan, a storekeeper has a duty to provide reasonably safe aisles for customers. *Whitmore v. Sears, Roebuck & Co.,* 279 N.W.2d 318, 320 (Mich. 1979) (citing *Serinto v. Borman Food Stores,* 158 N.W.2d 485, 486 (Mich. 1968)).

In order to prove that Target breached its duty, Daniel must prove that this Defendant created an unsafe condition or that it had an actual or a constructive notice that an unsafe condition existed. *Id.* at 321. In this case, Daniel does not allege that it caused the water to spill on the floor or that it had actual notice that the floor was wet. Therefore, Daniel has the obligation to establish that Target had constructive notice of the presence of water inside the store at or immediately prior to her fall.

In order to determine if Target should have known that a potentially dangerous condition existed, the Court must look to "the character of the condition and its duration." *Bursey v. Autozone (Michigan), Inc.,* No. 257383, 2006 WL 657036 (Mich. Ct. App. 2006) (citing *Clark v. Kmart Corp.,* 634 N.W.2d 347, 348-49 (Mich. 2001)). "Notice may be inferred from evidence that the unsafe condition has existed for a length of time sufficient to have enabled a reasonably careful storekeeper

4

to discover it. Where there is no evidence to show that the condition had existed for a considerable time, however, a directed verdict in favor of the [defendant] is proper." *Whitmore*, 279 N.W.2d at 321 (citations omitted). "[A]lthough constructive notice of a hazardous condition can be supported by reasonable inferences drawn from the evidence, such inferences must amount to more than mere speculation or conjecture." *Stephens v. Kroger Co.*, No. 232135, 2002 WL 1999761, at *1 (Mich. Ct. App. 2002).

A review of similar cases in Michigan indicates that a summary judgment is typically granted when the cause of a plaintiff's fall is uncertain or the duration of the existence of a dangerous condition is undetermined. For example, in *Whitmore*, the plaintiff fell when she stepped onto a wet area of a store parking lot. After her fall, several store employees attempted to wipe up the "wet substance." The court held that there was no testimony that the defendant had actual notice or that "the substance had been in the parking lot for a considerable period of time." *Whitmore*, 279 N.W.2d at 321-22. How and when the substance came to be at that spot "were matters of conjecture." *Id.* at 322.

In *Holliday v. National Dairy Products Corp.*, 213 N.W.2d 289 (Mich. Ct. App. 1973), the plaintiff, who fell while walking across a snow-covered parking lot, slipped on a snow-covered flat object that had not been seen by him prior to the incident. The Court, in noting that there were no witnesses to his fall, concluded that the entry of a summary judgment was appropriate because the plaintiff had not introduced a sufficiency of evidence upon which to establish the existence of a dangerous condition and "[t]he best that can be said for plaintiff's evidence is that there Might have been something under the snow." *Id.* at 291.

In *Dose v. Equitable Life Assur. Soc.*, 864 F. Supp. 682, 684 (E.D. Mich. 1994), the plaintiff

5

slipped on a puddle of water while walking through a shopping mall. Summary judgment was granted in favor of the defendant because the plaintiff had "presented no evidence, direct or by way of inference, that the puddle of water at issue existed for more than a few moments." *Id.* The fact that partially melted ice cubes were still present in the puddle suggested that the water had been recently spilled. *Id.*

In *Stephens v. Kroger Co.*, No. 232135, 2002 WL 1999761 (Mich. Ct. App. 2002), the plaintiff slipped on a piece of broccoli while shopping in the defendant's grocery store. The court granted the defendant's motion for a summary judgment because the plaintiff had offered no evidence - "beyond the mere existence of the hazard" - which indicated that a dangerous condition had existed "for a sufficient period of time for defendant to have known of its existence." *Id.* at *2. The court found that "how and when the hazard came to be are matters of conjecture and summary disposition was therefore appropriate." *Id.*

In this case, as in the cases which have been discussed above, Daniel's own testimony is insufficient to demonstrate that a dangerous condition existed or that Target had sufficient notice of its existence. For instance, Daniel admitted that she had not seen any water on the floor - either before or after her fall. Pl. Dep. 72:5-7, May 4, 2012. Daniel surmised that the floor was wet because of the conduct by store employees whom she saw wiping the floor "all around her." *Id.* at 72:9-10. Nevertheless, Daniel admitted that even if there had been some liquid on the floor, she had no idea how long it had been there. *Id.* at 76:10-13.

This projection by Daniel regarding the efforts by Target employees to clear the passenger aisles from debris, etc. is directly contradicted by a surveillance video which covered a portion of the events at issue. Although this Court must evaluate this surveillance video in a light that is most

6

favorable to Daniel, it also notes that at this summary judgment stage of the litigation, the Supreme Court has held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The surveillance video confirms the location within the store where Daniel slipped and fell to the floor. It also shows that she was helped to her feet by an unidentified person - presumably a Target employee. However, with the exception of Daniel's observation, there is no evidence that any Target employees wiped the floor at or near the point of her fall. Daniel counters this contention by submitting that the Target employees, about whom she spoke, were apparently not visible to the viewer because they were wiping the floor out of view of the camera at the time of the incident. This suggestion, even if true, fails to support her testimony. Even if Target employees were wiping the floor off-screen, the spot on the floor where Daniel's feet skidded out from under her is clearly visible in the video and no one ever wiped that particular area. Daniel admits that she never saw any accumulations of water. Furthermore, the surveillance video demonstrates that no water was ever wiped away from the area in which she fell. Thus, Daniel's testimony is insufficient to prove the existence of an unsafe condition. Instead, her success, if any, of establishing Target's alleged negligence must be based on the statements of a witness, Betty Allen, whose deposition testimony gave credence to Daniel's version of the events.

In her deposition, Allen stated that she was leaning against the jewelry counter next to her eleven year-old daughter when Daniel fell. At the same time - according to Allen - a female employee was helping a customer at the far end of the counter. Target's surveillance video, on the

7

other hand, clearly shows that no customers and no employees stood at the jewelry counter - or anywhere near it - when Daniel fell. The area around the counter is completely vacant.

Target discounts Allen's deposition testimony, asserting that the surveillance video provides incontrovertible proof that she was neither present at the time of the incident nor had any personal knowledge of the events surrounding Daniel's fall. Accordingly, Target requests that the Court reject Allen's testimony, citing to Fed. R. Evid. 104(a). The Court will decline this request. While the surveillance video shows that Allen was not standing at the jewelry counter as claimed by her, the limited view of the camera cannot eliminate the possibility that she was present in the store within view of Daniel at the time of her fall. Allen's testimony is arguably sufficient to create a genuine issue of a material fact as to the existence of a dangerous condition in the Target store.

Target next contends that even if Allen's testimony does support the existence of a hazardous condition, Daniel cannot establish that this alleged condition existed long enough to provide constructive notice to Target employees. Daniel testified that (1) her fall occurred after she "had just walked in the store," and (2) she did not know how long the alleged water had been on the floor. Pl. Dep. 76:12-13. Allen, too, having "just walked in [to the store] before [Daniel]," Allen Dep. 25:4-6, Aug. 1, 2012, estimated that she stood at the jewelry counter for only five or ten minutes before Daniel fell. Target asserts that this is an insufficient period of time for liability to attach. *Cf. Clark v. Kmart Corp.*, 634 N.W.2d 347, 349 (Mich. 2001) (evidence that condition existed for at least an hour "establishes a sufficient length of time that a jury could infer that defendant should have discovered and rectified the [dangerous] condition.").

Daniel, on the other hand, submits that there exists a sufficient quantity of circumstantial evidence upon which a reasonable juror could conclude that the water had existed for an extended

8

period of time prior to her slip and fall. Specifically, she asserts that customers were tracking water into the store from outside and the front of the store was covered by standing water. *See* Allen Dep. 14:19-15:7.

This evidence, while demonstrating the potential source of the puddle, is insufficient to support a finding that Target had constructive notice of its existence. The puddle could have formed over an hour ago or it could have been formed minutes before Daniel fell. She has not produced any evidence that would permit a jury to distinguish between these possibilities. Thus, a jury would be forced to rely on its own speculation. "Such speculation is impermissible, and cannot serve as the basis of a jury award." *Hernandez v. K Mart Corp.*, No. 235818, 2004 WL 1620853 (Mich. Ct. App. July 20, 2004) (citing *Skinner v. Square D Co.*, 516 N.W.2d 475 (Mich. 1994)). Accordingly, Daniel has failed to raise a genuine issue of a material fact as to whether Target had constructive notice of the alleged dangerous condition.

IV.

For the reasons that have been set forth above, the Court grants Target's motion for the entry of a summary judgment (ECF No. 21).

IT IS SO ORDERED.


Date: March 20, 2013                                    s/Julian Abele Cook, Jr.
                                                        JULIAN ABELE COOK, JR.
                                                        U.S. District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 20, 2013.

s/ Kay Doaks
Case Manager